**Job J. THYKKUTTATHIL, et al., pro se, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 09–03C.**

United States Court of Federal Claims.

Aug. 4, 2009.

Job J. Thykkuttathil, pro se, Renton, WA, for plaintiffs.

William G. Kanellis, United States Department of Justice, with whom were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Kenneth Dintzer, Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Job J. Thykkuttathil, Corvilia C. Thykkuttathil and Grace M. Thykkuttathil (plaintiffs), proceeding *pro se*, originally filed a takings claim in the United States District Court for the Western District of Washington against various federal officials and agencies. Upon transfer to this court, defendant United States moved to dismiss this suit for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). For the reasons set forth in this opinion, defendant's motion to dismiss is granted.

## BACKGROUND[1]

On September 25, 2008, the Office of Thrift Supervision (OTS) of the United States Department of the Treasury seized Washington Mutual Bank (WMB). Compl. at 2. WMB was placed in receivership under the Federal Deposit Insurance Corporation (FDIC), and was sold to JP Morgan Chase Bank, National Association. *Id.* As a result of these actions, plaintiffs allege that their WMB stock became worthless. *Id.* Plaintiffs contend that they have suffered direct and indirect losses related to the seizure of WMB in the amount of $195,413.71. *Id.* at 4.

In the complaint, plaintiffs name OTS, FDIC, and the United States Securities and Exchange Commission (SEC), as well as officials at those agencies, as defendants. Compl. at 1–2. The court construes plaintiffs' complaint to name the United States as the defendant in this suit. *See Stephenson v. United States,* 58 Fed.Cl. 186, 190 (2003) ("Stated differently for the benefit of *pro se* plaintiffs, the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." (citing *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941))). Plaintiffs allege that the United States has effected a taking of their property in various investment accounts, and rely on the Fifth Amendment of the United States Constitution as support for their claim in this court. Compl. at 2.

---

**1.** The facts recited here are taken from the complaint. Defendant accepts plaintiffs' allegations of fact as true for the purposes of defendant's motion. Def.'s Mot. at 1 n. 1. The court makes no findings of fact in this opinion, and relates only the facts essential to plaintiffs' takings claim.

## DISCUSSION

### I. Jurisdiction

This court's subject matter jurisdiction over takings claims against the United States is provided by the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) (2006); *Moden v. United States*, 404 F.3d 1335, 1341 (Fed.Cir.2005) (finding that when a plaintiff "ha[s] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper" in this court). For jurisdictional purposes, a plaintiff alleging a taking must merely make "a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under" the Fifth Amendment. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1309 (Fed.Cir.2008). Here, plaintiffs allege that they owned stock in WMB that was rendered worthless by regulatory actions of the federal government. Compl. at 2. Jurisdiction thus lies for their suit.

### II. *Pro Se* Litigants

The court acknowledges that plaintiffs are proceeding *pro se,* and are "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint and plaintiffs' response brief thoroughly and has attempted to discern all of plaintiffs' legal arguments.

### III. Standard of Review for a Motion Filed under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably

to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### IV. Analysis

Plaintiffs' regulatory takings claim is founded on a bank seizure by federal banking regulators. Defendant argues that takings claims based on bank seizures have been repeatedly rejected by binding precedent in this circuit. Def.'s Mot. at 5–10. The basic thrust of defendant's argument is that investors in bank stocks have no reasonable investment-backed expectation that federal regulators will not seize a bank, if and when regulators believe it has become necessary to intervene in a bank's operations. *See id.* at 5 ("[B]ecause the seizure of a financial institution falls within the ambit of a shareholder's investment-backed expectations, it may not serve as the basis for a Fifth Amendment takings claim.").

The facts alleged by plaintiffs in the complaint state that federal regulators believed it was necessary to intervene in WMB's operations:

> It is our understanding that if the U.S. government seized [WMB] for the "Greater Good" of the American people, with the intention of protecting the banking system
> . . . .
> . . . .
> The [OTS] took possession of [WMB] on September 25, 2008 because it believed that "it was highly likely to be unable to pay its obligations and meet its operating liquidity needs." The bank had not yet failed but the OTS took possession because it thought it might fail.

Compl. at 2. Thus, plaintiffs' takings claim is based on a bank seizure by federal regulators, who are alleged to have acted according to their assessment that WMB "might fail." The question for the court is whether

a bank seizure under these conditions constitutes a takings claim.

■ The United States Court of Appeals for the Federal Circuit has addressed this issue. *Golden Pac. Bancorp v. United States*, 15 F.3d 1066 (Fed.Cir.1994) (*Golden Pacific*). The Federal Circuit held in *Golden Pacific* that bank seizures do not constitute regulatory takings under the Fifth Amendment, because investors in banks do not have a reasonable investment-backed expectation that regulators will not seize banks that are deemed to be in trouble. *Id.* at 1074 ("Given the highly regulated nature of the banking industry, ... the [federal regulators' seizure of the bank] could not possibly have interfered with a reasonable investment-backed expectation on the part of Golden Pacific."). The principle that a bank seizure does not provide the basis for a valid takings claim in this court is set forth in numerous cases in this circuit, and remains good law. *See, e.g., Cal. Hous. Sec., Inc. v. United States*, 959 F.2d 955, 958 (Fed.Cir.1992) (holding that the seizure and subsequent liquidation of the bank in question "cannot constitute a physical fifth amendment taking because neither [the bank nor its owner] could have developed a historically rooted expectation of compensation for such a seizure"); *Castle v. United States*, 48 Fed.Cl. 187, 220 (2000) ("The law is clear that the seizure of a bank that fails to meet regulatory capital requirements does not constitute a taking." (citing *Branch v. United States*, 69 F.3d 1571, 1575 (Fed.Cir.1996))), *aff'd in relevant part*, 301 F.3d 1328, 1341–42 (Fed.Cir. 2002); *Am. Cont'l Corp. v. United States*, 22 Cl.Ct. 692, 698 (1991) (*American Continental*) (stating that "it was hardly contrary to reasonable expectations of an investor in the highly regulated, federally insured banking industry when the federal government buttressed the then-existing regulatory scheme by authorizing appointment of a conservator or receiver when a federally insured bank is in [trouble]") (citation omitted).

■ Plaintiffs nonetheless ask the court to distinguish the bank seizure in this case from the seizure of an insolvent bank, arguing that WMB "had not failed when it was placed into receivership." Pls.' Resp. at 4.

Plaintiffs' argument is unavailing. The Federal Circuit rejected such an argument at the end of their decision in *Golden Pacific*, and the court must do so here. In *Golden Pacific*, the plaintiffs similarly argued that federal regulators made a mistake and closed a solvent bank. 15 F.3d at 1075. The Federal Circuit held that such a mistake does not give rise to a takings claim. *Id.* at 1076 (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 803 (Fed.Cir.1993)). This court cannot stray from the holding of our appellate court.

As this court stated in another takings case, "[t]he Federal Circuit has never upheld a claim that a seizure of a financial institution under the statutes and regulations designed to insure safe and secure banking institutions constituted a taking." *Franklin Sav. Corp. v. United States*, 46 Fed.Cl. 533, 535 (2000), *aff'd*, 97 Fed.Appx. 331 (Fed.Cir.2004). The court noted that "[binding precedent holds] that banking is a highly regulated industry and that one engaged in that business is deemed to understand that if his bank becomes insolvent or, in the judgment of the regulatory authorities, is engaged in unsafe or unsound banking practices, the bank may be seized by government officials and be operated and/or liquidated by them." *Id.* at 536. When asked to distinguish the seizure of an allegedly solvent bank from binding precedent regarding insolvent bank seizures, the court held that the alleged solvency of the seized bank was of no consequence. *Id.* (citing *Golden Pacific*, 15 F.3d at 1075). The court concluded that whether or not a bank is solvent when seized, a seizure by federal banking regulators does not constitute a taking. *Id.* at 537 ("A bank seized because, in the judgment of regulators, it is insolvent or engaged in unsafe or unsound practices is not entirely without remedy ... [b]ut 'just compensation' for a taking is not an available remedy.") (citations omitted).

■ This court must conform to binding precedent on this issue. A takings claim will not lie for the seizure of a bank by federal regulators, even if an allegation is made that the seized bank had not yet failed when it was seized. *See* Pls.' Resp. at 4 (alleging that WMB "had not failed when it

was placed into receivership"). Even if plaintiffs contend that the United States erred when it seized WMB, *see id.* (stating that WMB "should not have been placed into receivership"), *Golden Pacific* holds that a takings claim based on a mistaken or erroneous bank seizure is not a claim upon which relief may be granted by this court.[2]

## CONCLUSION

After all favorable inferences have been accorded plaintiffs' allegations of fact, the actions of federal banking regulators at issue here could not give rise to a takings claim. Defendant's motion to dismiss must be granted. Although the court has deep sympathy for investors who have suffered significant losses in this economic downturn, the Fifth Amendment of the Constitution does not provide compensation in these circumstances.

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed March 30, 2009, is **GRANTED**;

(2) Plaintiffs' Motion for Summary Judgment, filed April 17, 2009, is **DENIED** as **moot**;

(3) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, with prejudice; and

(4) Each party shall bear its own costs.

---

**2.** Another articulation of takings jurisprudence instructs that a bank seizure must be presumed to be lawful, when considering a takings claim based on that federal action. *See Acadia Tech., Inc. v. United States,* 458 F.3d 1327, 1331 (Fed. Cir.2006) (*Acadia*) ("For takings purposes, we therefore must assume the government conduct at issue ... was not unlawful."). To the extent that there might be some tension between the articulation of the takings analysis at the end of the *Golden Pacific* decision and in *Acadia,* the court notes that plaintiffs' takings claim fails under either articulation. Under *Golden Pacific,*
an erroneously seized bank does not give rise to a takings claim. 15 F.3d at 1076 (citing *Tabb Lakes,* 10 F.3d at 803). Or, under *Acadia,* 458 F.3d at 1331, an erroneously seized bank is deemed to have been lawfully seized, for the purposes of conducting a takings analysis, and lawful bank seizures also do not give rise to valid takings claims. *See, e.g., Golden Pacific,* 15 F.3d at 1074; *American Continental,* 22 Cl.Ct. at 698. Allegations regarding the inappropriateness of the WMB seizure do not affect the outcome of the takings analysis in this case.